**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louise Ray, et al., ) | No.  CV-22-08101-PCT-SPL |
| ) | |
| Plaintiffs, ) | **ORDER** |
| vs. ) | |
| ) | |
| Office of Navajo and Hopi Indian ) | |
| Relocation, ) | |
| ) | |
| Defendant. ) | |

Before the Court are Plaintiffs Louise Ray, Nellie Jackson, Ruth Begay, Johnnie Begay, and Lorraine Attakai's (collectively, "Plaintiffs") Motion for Summary Judgment (Doc. 16) and Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR" or "Defendant") Cross-Motion for Summary Judgment (Doc. 19). The Motions are fully briefed. (Docs. 16, 19, 21 & 24). For the following reasons, Plaintiffs' Motion is granted, Defendant's Cross-Motion is denied, and the matter is remanded for further proceedings.[1]

I.     **BACKGROUND**

    A. **The Settlement Act**

The Navajo–Hopi Settlement Act (the "Settlement Act") authorized a court-ordered partition of land previously referred to as the Joint Use Area ("JUA")—occupied by both Navajo and Hopi residents—into the Navajo Partitioned Lands ("NPL") and the

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Hopi Partitioned Lands ("HPL"). *See* Pub. L. No. 93-531, § 12, 88 Stat. 1716 (1974); *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). The Settlement Act created what is now the ONHIR to disburse benefits to assist with the relocation of Navajo and Hopi residents who then occupied land allocated to the other tribe. *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989).

### B. Factual and Procedural Background

Plaintiffs are enrolled members of the Navajo Nation. (Doc. 1 at 4). They are also siblings, each being born to George and Emily Bah Begay at some point between 1940 and 1958. (AR69).[2] Plaintiffs allege that "their family maintained a traditional Navajo 'customary use area' that spanned what became the HPL/NPL demarcation line." (Doc. 1 at 6). Plaintiffs allege that "[t]he portion of that customary use area that extended onto what became the HPL was the family's summer camp, occupied from March or April until the first frost, generally late October." (*Id.*). Plaintiffs allege that the HPL summer camp had a cornfield, a "shack house," a tent, and livestock that they moved there every summer. (*Id.*). Plaintiffs allege that they planted and harvested their HPL cornfield until 1976 at which time they were told to stop by Hopi personnel. (*Id.*). Based on these allegations, Plaintiffs contend that they were legal residents of the HPL during the requisite time period, and that they are entitled to relocation benefits. (*Id.* at 3).

In February and July 2010, Plaintiffs filed Applications for Relocation Benefits, which were denied by ONHIR on February 13, 2010 and February 19, 2013.[3] (*Id.* at 5; *see also* AR17, 75, 164, 241, & 298). The ONHIR based its denials on the agency's finding that Plaintiffs and their parents "are listed in the Bureau of Indian Affairs'

---

[2] AR refers to the ONHIR Administrative Record, as filed on the docket and as numbered by the parties (with preceding zeroes omitted). (*See* Doc. 12).

[3] Specifically, Plaintiff Jackson applied on February 2, 2010, Plaintiffs Ruth Begay and Lorraine Attakai applied on July 23, 2010, Plaintiff Ray applied on July 29, 2010, and Plaintiff Johnnie Begay applied on July 30, 2010. (Doc. 1 at 5). Plaintiff Jackson's application was denied on February 13, 2010, and the remaining four Plaintiffs' applications were denied on February 19, 2013. (*Id.*).

[("BIA")] 1974–75 Enumeration of residents of the JUA as residing only on the [NPL]." (*Id.*). With respect to Plaintiffs Ray, Jackson, and Ruth and Johnnie Begay, the ONHIR denial letters additionally noted that their applications indicated that they resided outside the Navajo Nation on December 22, 1974. (*Id.*). Plaintiffs filed appeals in March 2013, (AR21, 79, 169, 245, & 303), and an Appeal Hearing (the "Hearing") was held before an Independent Hearing Officer ("IHO") on February 19, 2016. (AR391–529 ("Transcript of Proceedings")). After the Hearing, the IHO denied Plaintiffs' appeal and upheld the ONHIR's denial of all applications based on a finding that Plaintiffs were not HPL residents at the time of the passage of the Settlement Act. (*See* the "Decision," AR607–15). On June 2, 2016, ONHIR issued Final Agency Action in Plaintiffs' cases. (AR54, 114, 215, 274, & 352). On June 2, 2022, Plaintiffs initiated this action seeking judicial review of the denial of relocation benefits. (Doc. 1). Between November 22, 2022, and March 20, 2023, the parties submitted their briefing, with each requesting summary judgment in their favor. (Docs. 16, 19, 21, & 24).

## II.   LEGAL STANDARDS

### A. Summary Judgment

Generally, summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When conducting judicial review of an administrative agency's action, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, the Court must "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* Summary judgment is therefore "an appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts as it did." *Id.* at 770.

### B. APA Standards of Review

The Court's review of the IHO's decision under the Settlement Act is governed by the Administrative Procedure Act ("APA"). *See Hopi Tribe v. Navajo Tribe*, 46 F.3d 908,

914 (9th Cir. 1995). Under the APA, the Court must uphold agency action unless it was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122.

An ONHIR decision satisfies the "arbitrary and capricious" standard if "the agency examine[s] the relevant data and articulate[s] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Hopi Tribe*, 46 F.3d at 914 (internal quotation marks omitted). This scope of review is narrow, and the Court may not "substitute its judgment for that of the agency." *Id.* (internal quotation marks omitted). Still, a decision is arbitrary and capricious "if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Likewise, if an agency "fails to follow its own precedent or fails to give a sufficient explanation for failing to do so," its decision is arbitrary and capricious. *Andrzejewski v. Fed. Aviation Admin.*, 563 F.3d 796, 799 (9th Cir. 2009).

An agency's decision satisfies the "substantial evidence" standard if it is supported by "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The standard requires "more than a mere scintilla but less than a preponderance" of evidence. *Id.* The IHO may "draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). "Where evidence is susceptible of more than one rational interpretation," the IHO's decision must be upheld. *Id.*

### C. The Settlement Act and Associated Regulations

A Navajo applicant is eligible for benefits under the Settlement Act if he was a legal resident of the HPL as of December 22, 1974 and was a head of household at that time. 25 C.F.R. §§ 700.147(a), 700.69(c); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d 1040, 1044 (D. Ariz. 2018). The applicant bears the burden

of proving both the residency and head-of-household elements. 25 C.F.R. § 700.147(b). Only the residency element is at issue in this case, as the IHO's decision—and the parties' briefing—does not address the head-of-household element.

Under the applicable regulations, determining an applicant's residence "requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,278; *see also Charles v. Off. of Navajo & Hopi Indian Relocation*, 774 Fed. Appx. 389, 390 (9th Cir. 2019). Such manifestations of intent may include ownership of livestock, ownership of improvements, grazing permits, livestock sales receipts, homesite leases, public health records, medical records, school records, military records, employment records, mailing address records, banking records, driver's license records, voting records, home ownership or rental off the JUA, census data, Social Security records, marital records, court records, birth records, the JUA roster, and any other relevant data. 49 Fed. Reg. 22, 278. "An individual who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residency." 49 Fed. Reg. 22,277.

## III.   **DISCUSSION**

### A. Additional Documents Not in the Record

As an initial matter, the parties disagree on what documents the Court should consider as part of the administrative record. Plaintiffs attach two exhibits to their Motion for Summary Judgment (Docs. 16-1 & 16-2), which Defendant argues is improper because they were not part of the administrative record. (Docs. 19 at 6–7 & 24 at 8–10).

"[T]he focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The administrative record consists of the documents compiled and submitted by the agency and *also* "documents and materials directly or indirectly considered by agency decision-makers." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989). Additionally, a district court may consider documents outside of the administrative record in four "narrowly construed"

circumstances: when "(1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

Plaintiffs argue that Exhibit I (Doc. 16-1), which is a prior decision of the IHO, should be considered "to show that in past decisions the IHO did not consider the Enumeration to be absolutely determinative of residency as he did here." (Doc. 21 at 10). Because an agency must follow its own precedent or else explain any deviation, this Court may consider prior ONHIR decisions to determine whether a decision is arbitrary and capricious. *See Torpey v. Off. of Navajo & Hopi Indian Relocation*, No. CV-17-08184-PCT-SMB, 2019 U.S. Dist. LEXIS 154168, at *9–10 (D. Ariz. Sept. 6, 2019). However, previous decisions only serve this purpose if they carry precedential value in the case at hand. *See Whitehair v. Off. of Navajo & Hopi Indian Relocation*, No. CV17-08278-PCT-DGC, 2018 WL 6418665, at *3 (D. Ariz. Dec. 6, 2018). Accordingly, the Court will consider Exhibit I only if it sets forth ONHIR policy or if it involves facts indistinguishable from the instant case. *See id.* at *10.

The Court finds that the IHO Decision attached as Exhibit I (the "*Bahe* Decision") involves facts that are indistinguishable from the instant case. Both cases involved applicants who resided on HPL land only during the summer and who were *not* listed as HPL residents in the Enumeration. The Court finds the *Bahe* Decision to be necessary to determine whether the IHO adequately explained its credibility and residency decisions because it sheds light on how the agency has previously dealt with applicants in a similar situation—that is, where the Enumeration does not list them, but they nonetheless offer other evidence of their residency. Moreover, the Court will already be considering two *other* prior IHO decisions—which are already included in the administrative record—for the same reason. (*See* AR595–605). The Court finds the *Bahe* Decision similarly helpful to these other two decisions and will consider it in this review.

Plaintiffs argue that Exhibit II (Doc. 16-2), which is an excerpt from a report produced by ONHIR's predecessor agency and presented to the United States Congress, should be considered "to identify and plug holes in the administrative record." (Doc. 21 at 10–11). Plaintiffs explain that this particular document has been previously accepted by this Court under the second and third exceptions to supplement the administrative record. (*Id.* at 10 (citing *Tso v. Off. of Navajo & Hopi Indian Relocation*, No. CV-17-08183-PCT-JJT, 2019 WL 1877360, at *8 (D. Ariz. Apr. 26, 2019))). Defendant argues that Exhibit II should *not* be considered because it "deals with NHIRC's [ONHIR's predecessor agency] own enumeration list—not the [BIA]'s Enumeration, which is at issue in this case. (Doc. 24 at 10). The Court is unpersuaded by this argument. *See infra* n.6. As in *Tso*, the Court finds that consideration of Exhibit II is appropriate.

### B.  Denial of Relocation Benefits

As noted, only the residency element is at issue on this administrative review, as the head-of-household element was not addressed in the IHO's Decision nor in the parties' briefing. Thus, the Court will move forward under the assumption that Plaintiffs had each achieved head-of-household status during the relevant time period.

With respect to the residency requirement, the Court first provides a summary of the IHO's conclusion that Plaintiffs were *not* HPL residents on December 22, 1974. The IHO began by noting that Plaintiffs were born between 1940 and 1958, and that they primarily lived in "the Teesto Chapter, south of the Jeddito Wash and west of Seba Dalkai School, in an area partially partitioned for the use of the Hopi Indians." (AR609). The IHO recognized that the family had two camps—approximately 1.0 to 1.5 miles apart—"that were part of a traditional use area, a winter home that was later partitioned for the use of the Navajo Indians, and a cornfield that was later partitioned for the use of the Hopi Indians." (*Id.*). The IHO noted that the 1974–75 BIA Enumeration (the "Enumeration") listed the family as residing at two locations on the NPL and identified several improvements at those locations. (AR609–10). In contrast, the Enumeration did *not* identify any improvements for the family on the HPL. (AR610). The IHO recognized

Plaintiffs' position that the family's cornfield was located on the HPL and that it was used through 1976, two years after the Settlement Act was passed. (*Id.*). The IHO noted photographs submitted into the record that, according to Plaintiffs, were taken in 1973 and showed "family members standing or sitting in front of a shack . . . that the family used at the HPL cornfield." (*Id.*). The IHO also noted other photographs—taken in 2010—apparently showing the remnants of the shack. (AR610, 613). The IHO recognized Plaintiffs' contention that the family erected a tent near the shack each spring and that the family owned 80 sheep which were "moved seasonally between the camps." (AR610). The IHO noted that the tent was not shown in any of the photographs and that the shack was not listed in the Enumeration. (AR 610–11). Finally, the IHO noted that— on the date the Settlement Act was passed—all of the Plaintiffs, except for Attakai, had graduated from high school and were residing off the NPL and HPL, "attend[ing] post-secondary school and/or employment." (AR 611).

In a section of the Decision titled "Credibility Findings Related to All Applicants and Witnesses," the IHO states the following with respect to Plaintiffs and the four other individuals[4] who testified at the Hearing:

> To the extent that *any of the applicants* testified that they were legal residents of any area of Teesto Chapter that was partitioned for the use of the Hopi Indians as part of a customary use area, as of December 22, 1974, that testimony is not credible.

> To the extent that *any of the applicants* claim that the BIA enumeration was incomplete, that testimony is not credible.

> To the extent that *any of applicants' witnesses* support the use of the cornfield beyond December 22, 1974, that testimony is not credible.

(*Id.* (emphasis added)). The IHO supported these credibility findings—which, in effect, amounted to the IHO's ultimate conclusion on the residency issue—by pointing to the

---

[4] The four other individuals who testified at the Hearing were Ray Jodie, Thelma Polacca, Levi Biggambler, and Margaret Nellie Nez. (Doc. 15 at 18–22); (AR483–520).

Enumeration's findings and "serious credibility question[s]" surrounding the photographs submitted by Plaintiffs. (AR 613–14).

With respect to the photographs allegedly taken in 1973 at the HPL cornfield, the IHO recognized that the short-sleeved shirts worn by the children was somewhat supportive of Plaintiffs' position that the photographs were taken during the summer. (AR614). The IHO also recognized that the photographs showed that a shack existed at the time they were taken. (*Id.*). However, the IHO found that the photographs' credibility was undermined in two ways. (*Id.*). First, the claimed 1973 date of the photographs was questionable because the photographs depicted Plaintiffs as children, and all of the Plaintiffs would have been between 15 and 33 years of age by 1973. (*Id.*). Second, the IHO noted that—unlike other pictures submitted from 1968—the 1973 photographs did not show growing corn, undermining Plaintiffs' claim that the cornfield was still in use at the time the Settlement Act was passed in 1974. (*Id.*).

With respect to the Enumeration, the IHO first noted that the family was "enumerated at [their] NPL home" and that the BIA "did not include a cornfield or any structures on HPL as being owned by [Plaintiffs'] parents." (AR613). The IHO found this to be strong evidence against Plaintiffs' position because it would have been "impossible [for the BIA] to overlook" the existence of the cornfield, given its size, location (just a "mere mile" from the family's NPL home), and the fact that the family claimed to have livestock there. (AR 613–14). Second, the IHO noted that—as part of the Enumeration— Plaintiffs' father was interviewed two separate times, once in February 1975 and again in May 1975. (*Id.*). The IHO noted that each interview took place at the family's NPL home rather than at the HPL cornfield, and that the May 1975 interview was particularly damaging to Plaintiffs' position given that May was "a time when he would have been expected to be at the cornfield/summer camp (especially if the family's sheep was moved seasonally)." (*Id.*).

In sum, the IHO found "too many objective and circumstantial indicia which do not support [Plaintiffs'] claim about a working cornfield as of the date of passage of the

Act, including the enumeration, photographs . . ., credibility of the witnesses, and interviews of [Plaintiffs'] father by the BIA." (AR614–15). The IHO found that Plaintiffs failed to "overcome the objective evidence that exists in this appeal" and that Plaintiffs' "testimony shows that the applicants cultivated a well-planned story that is at odds with the objective evidence." (AR615). The IHO denied Plaintiffs' appeal, concluding that "[n]one of the [Plaintiffs] was an HPL resident as part of a customary use area at the time of passage of the Act and none of them is eligible to receive relocation benefits." (*Id.*).

In seeking this Court's review, Plaintiffs argue that the IHO's conclusion that they were not HPL residents on and after December 22, 1974, was arbitrary, capricious, and unsupported by substantial evidence. First, Plaintiffs argue that the IHO's credibility determinations with respect to the testimony of Plaintiffs and four other Hearing witnesses were "facially deficient, stated without evaluation of individual testimony, and absent the 'specific and cogent reasons' for an adverse credibility determination to be based upon substantial evidence under the APA and Ninth Circuit precedent." (Doc. 16 at 5). Second, Plaintiffs argue that the IHO failed to objectively evaluate all the record evidence in reaching his conclusion. (*Id.* at 9–16). The Court need only address the first argument. *See Bitah v. Off. of Navajo & Hopi Indian Relocation*, No. CV-20-08323-PCT-JZB, 2022 WL 1751836, at *6, *10 (D. Ariz. Mar. 30, 2022) ("Because the Court will remand this action, it makes no conclusions as to the remaining arguments.").

"When the decision of an [IHO] rests on a negative credibility evaluation, the [IHO] must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec'y of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted); *see also Hossain v. Immigr. & Naturalization Serv.*, 7 Fed. Appx. 760, 760 (9th Cir. 2001) ("We review credibility determinations for substantial evidence and defer to credibility findings that are fairly supported by the record and supported by specific and cogent reasons for the rejection of the testimony."). The Ninth Circuit has further explained that "if an [IHO] has grounds for disbelieving material testimony, it is both reasonable and desirable to require the ALJ to articulate

those grounds in the original decision." *Ceguerra*, 933 F.2d at 740 (citing *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396 (9th Cir. 1988)). "The IHO may set forward [credibility reasoning] either in the formal credibility determination or in the body of the decision." *Begay v. Off. of Navajo & Hopi Indian Relocation*, 2021 WL 4247919, No. CV-20-08102-PCT-SMB, at *4 (D. Ariz. Sept. 17, 2021) (citation omitted).

An IHO's credibility findings are typically "granted substantial deference by reviewing courts." *De Valle v. Immigr. & Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990) (citations omitted). This is because it is the IHO who is "in a position to observe [a witness]'s tone and demeanor, to explore inconsistences in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence." *Sarvia-Quintanilla v. U.S. Immigr. & Naturalization Serv.*, 767 F.2d 1387, 1395 (9th Cir. 1985). As the Ninth Circuit has put it, the IHO is thus "uniquely qualified to decide whether a [witness]'s testimony has about it the ring of truth." *Id.* That said, the fact remains that "an adverse credibility finding must be supported by specific, cogent reasons, and cannot be based on speculation and conjecture." *Shire v. Ashcroft*, 388 F.3d 1288, 1295 (9th Cir. 2004).

The Court finds that the IHO, in relying solely on the photographs' unreliability and the Enumeration's findings, failed to support his credibility findings with substantial evidence. With respect to the photographs, the IHO observed that the photographs show Plaintiffs as young children; in 1973, however, Plaintiffs were all between the ages of 15 and 33. (*Id.*). Thus, the IHO found that "[a] serious credibility question exists" as to whether they were actually taken in 1973 as Plaintiffs claimed.[5] (AR614). This

---

[5] The IHO also observed that the photographs do not depict a growing cornfield or the tent that apparently existed on the property. (AR614). Of course, this observation is meaningless given the uncertainty surrounding the exact dates the photographs were taken. If the photographs were taken in the early summer, for example, the absence of a growing cornfield could merely be the result of the corn having not grown yet. The absence of a tent could be for the simple reason that it had not yet been erected. Moreover, given that even *the year* the photographs were taken is uncertain, it is impossible to draw any relevant conclusions from the fact that the photographs do not

observation speaks only to the reliability of the photographs as evidence. It says very little, if anything, about whether the testimony presented by Plaintiffs at the Hearing was credible. It may very well be true that the photographs were *not* taken in 1973 and that they should not be given any significant weight in the residency analysis. At the same time, Plaintiffs' testimony—that they lived at the HPL cornfield during the summers throughout the relevant time period—could still be true, regardless of the photographs. Although Plaintiffs' testimony *about* the photographs—*e.g.*, Plaintiff Jackson's testimony that "some of the older photographs were taken around 1973," (Doc. 20 at 24)—may lose credibility, the IHO offered no reason why *all* of Plaintiffs' testimony about their HPL residency should be discredited merely because the photographs could not be reliably dated. At best, the IHO demonstrated that it is impossible to know the dates of the photographs and that they should therefore be entirely ignored as evidence. The Court finds that the unreliability of the photographs is not a specific and cogent reason to support the IHO's credibility findings.

Aside from the unreliability of the photographs, the IHO's credibility findings are based solely on the Enumeration. As noted above, the Enumeration listed Plaintiffs as living on the NPL. It did not list any HPL improvements for the family and failed to mention the cornfield or the shack despite their close proximity. Further, the creation of the Enumeration involved two separate interviews of Plaintiffs' father; both interviews took place on the NPL, including one interview in May 1975 when their father would have been expected to be at the HPL cornfield. Defendant contends that these facts from the Enumeration amounted to specific and cogent reasons to discredit the testimony of all six Plaintiffs and the other four individuals who testified at the Hearing. (Doc. 19 at 12).

The Court is unpersuaded. Including Plaintiffs, *ten* separate individuals testified at the Hearing that Plaintiffs lived on the HPL during the summer throughout the relevant time period. Aside from a few small differences in the details, their testimony appears to

show corn or a tent.

be consistent. The IHO failed to meaningfully explain how the Enumeration, on its own, was sufficient to entirely undermine the credibility of such a large amount of consistent testimony from individuals who had direct knowledge of Plaintiffs' whereabouts in the early 1970s. The fact that the Enumeration did not list Plaintiffs as HPL residents does not necessarily mean that their testimony—and the testimony of the other four witnesses—was untrue. Indeed, Plaintiffs cite to at least three separate ONHIR decisions in which an IHO granted relocation benefits to an applicant even though the applicant was not recorded in the Enumeration as being a resident of the relevant HPL or NPL land. (*See* Doc. 16 at 10–11; *see also* Doc. 16-1 at 5 (IHO finding that "standing alone, the roster [BIA Enumeration] cannot be the sole source upon which applicant could be disqualified from receiving relocation benefits and assistance")). This is because the Enumeration was, in many ways, unreliable. (*See* Doc. 16-2 at 6 (ONHIR report discussing why the 1974–75 BIA Enumeration was limited in its usefulness and generally unreliable)). Courts have generally recognized this unreliability by finding that the Enumeration is not, on its own, sufficient evidence to establish residency or non-residency. *See Walker v. Navajo-Hopi Indian Relocation Comm'n*, 728 F.2d 1276, 1279 (9th Cir. 1984) ("The [ONHIR] has always taken the position that the enumeration list is not conclusive as to eligibility."); *Begay*, 305 F. Supp. 3d at 1045 ("[P]recedent does establish that the BIA enumeration alone cannot establish residence, but it may be used as *prima facie* evidence of residency that Plaintiff then has the burden of disproving.").[6]

In this case, the IHO essentially treated the Enumeration as conclusive evidence of

---

[6] Defendant argues that *Walker* should not be relied upon in part because the ONHIR and BIA Enumerations are distinct. The Court is unpersuaded. Although the ONHIR Enumeration was distinct from and conducted a few years after the BIA Enumeration, its purpose was the same. Both Enumerations sought to approximate the number of people affected by the Settlement Act so that relocation costs could be estimated. *See Walker*, 728 F.2d at 1279; *see also Begay*, 305 F. Supp. 3d at 1045, n.4 ("The BIA performed an 'Enumeration' or census of the people and improvements to land located within the former [JUA] that became HPL and NPL in 1974 and 1975. The results of that enumeration are compiled in the BIA Roster.").

Plaintiffs' residency because he failed to meaningfully consider whether Plaintiffs had met their burden of disproving the Enumeration. Plaintiffs offered a fair amount of evidence to support their position. As mentioned, Plaintiffs put forth the testimony of ten separate individuals who consistently testified that Plaintiffs resided on HPL land during the summer. The IHO dismissed such testimony collectively, entirely avoiding any consideration of the details contained therein. Plaintiffs also offered maps identifying the location of their two homesites and three supporting statements (two declarations and a notarized statement) from individuals who corroborated Plaintiffs' testimony. The IHO entirely failed to consider this evidence in his Decision, let alone in supporting his credibility determinations. Rather, the IHO found the Enumeration to be conclusive on the credibility issue—and, in essence, conclusive on the residency issue as a whole— reasoning that "one may safely infer that the enumerators were not told about a cornfield with a shack a mere mile from applicants' family home" and that the cornfield and livestock "would have been impossible to overlook." (AR613–14). Such inferences are entirely conclusory and fail to meaningfully challenge the significant testimony and other evidence put forth by Plaintiffs. Likewise, the IHO's reference to the two interviews conducted with Plaintiffs' father fails to meaningfully rebut Plaintiffs' evidence or otherwise justify complete reliance on the Enumeration. The February 1975 interview on NPL land can be ignored entirely, as that was during the winter, well before Plaintiffs' father would have even been at the HPL cornfield. The May 1975 interview, on the other hand, shows only that Plaintiffs' father was at the NPL homesite *on that day*. As Plaintiff Jackson testified, he may have been there simply to check on Plaintiffs' grandparents, or to get tools and supplies for the family's work at the HPL cornfield. (AR423–24). After all, the two homesites were only 1.0 to 1.5 miles apart—a mere twenty-minute walk. (AR422). In sum, the Court finds that the IHO failed to explain how the Enumeration, on its own, amounted to a specific and cogent reason to entirely undermine the credibility of Plaintiffs and the other four individuals.

In essence, the IHO based his benefits decision entirely on the Enumeration. As

14

noted above, the IHO's Decision did not delve into the specifics of any of the testimony offered at the Hearing by Plaintiffs; rather, the Decision referred to the testimony only collectively and rejected it as not credible. Likewise, the Decision made no reference to the other evidence offered by Plaintiffs, such as the maps and the supporting declarations and notarized statement. Instead, the IHO only addressed three categories of evidence in his Decision: (i) the Hearing testimony offered by Plaintiffs, (ii) the photographs, and (iii) the Enumeration and its underlying facts. Given the complete uncertainty surrounding the dates the photographs were taken, it was reasonable for the IHO to ignore them entirely. This left the IHO with only the testimony and the Enumeration to consider. The testimony was consistent and strongly supportive of Plaintiffs' claim to HPL residency. The Enumeration, on the other hand, constituted *prima facie* evidence of Plaintiffs' *non*-HPL residency. Faced with this competing evidence, the IHO simply chose to follow the Enumeration and to discount the testimony as not credible. The IHO offered no meaningful explanation for why the Enumeration was given so much weight in comparison to the testimony.

In sum, the Court finds that the IHO failed to support his denial of benefits with substantial evidence because he rejected as "not credible" *all* of Plaintiffs' testimony related to their alleged HPL residency and because he based this negative credibility determination—in effect, the entire benefits decision—solely on the Enumeration. *See Begay*, 305 F. Supp. 3d at 1045 ("[P]recedent does establish that the BIA enumeration alone cannot establish residence."). Given the IHO's failure to satisfy the substantial evidence standard with respect to the credibility determination and the residency issue, the Court cannot uphold the IHO's Decision. Whether benefits should ultimately be awarded, however, remains with the IHO. Open questions remain as to the credibility of the testimony from Plaintiffs and the other four individuals who testified at the Hearing, as well as to whether Plaintiffs satisfied the residency requirement based on all of the evidence in the record. The Court will remand for a decision consistent with this Order.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 16) is **granted**. The matter is **remanded** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. 19) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **enter judgment** in favor of Plaintiffs and **terminate this action**.

Dated this 25th day of July, 2023.

Honorable Steven P. Logan
United States District Judge